IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

A.G. and C.F., )
)
    Plaintiffs, )
)
v. ) No. 1:16-cv-00027
) Senior Judge Haynes
TENNESSEE DEPARTMENT OF )
EDUCATION and LEWIS COUNTY )
SCHOOL SYSTEM, )
)
    Defendants. )

**MEMORANDUM**

Plaintiffs, A.G., a minor, and C.F., his mother, filed this action against the Defendants Tennessee Department of Education ("TDOE") and Lewis County School System ("LCSS") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12117. Plaintiffs assert claims that the Defendants denied A.G. a free appropriate pubic education ("FAPE") and discriminated against him based on his disabilities. Plaintiffs also assert a claim for breach of a settlement agreement by the Defendants LCSS.

Before the Court is the Defendant LCSS's motion to dismiss (Docket Entry Nos. 8 and 9) and the Defendant TDOE's motion to dismiss (Docket Entry No.13). Both Defendants contend that Plaintiffs failed to exhaust the administrative remedies available to them and this action must be dismissed for failure to state a claim upon which this Court can grant relief.

In their responses, Plaintiffs argue that given their experiences in prior administrative proceedings, exhaustion is futile (Docket Entry Nos. 10 and 15) and that Plaintiffs' breach of

settlement agreement claim does not require exhaustion under 20 U.S.C. § 1415(e)(2)(F). (Docket Entry No. 10 at 3-4).

### A. Analysis of the Complaint

According to the complaint, Plaintiff A.G. started kindergarten at Lewis County Elementary School in the fall of 2014 after his fifth birthday in June. (Docket Entry No. 1, Complaint, at ¶¶ 38, 45 n.3). Based upon a scoring system, Plaintiff was placed in a transitional kindergarten class. Id. at ¶ 38. A.G., who has been diagnosed with ADHD for which he takes medication, has made progress in mastering new skills, but was recommended for a second year of kindergarten based, in part, on A.G.'s performance on the Educational Discovery assessment that was administered four times that year. Id. at ¶¶ 39-40, 44. Plaintiff's mother sought an explanation and invoked Plaintiffs' rights under the IDEA. Id. at ¶ 39, 43-53, 59-110.

Plaintiffs filed four administrative complaints, the last was on August 4, 2015 with A.G.'s Individual Education Plan ("IEP") Team meeting. Id. at ¶¶ 51-52, 59-65, 76-66. Plaintiff also filed complaints with the TDOE that investigated Plaintiffs' complaints and found procedural violations in two instances for which TDOE ordered corrective action regarding the procedural defects, but did not render findings of substantive violations of the IDEA. Id. at ¶¶ 52, 62, 65, 78. C.F. filed another due process complaint on August 17, 2015 seeking redress under the IDEA. Id. at ¶¶ 2, 79. C.F. and LCSS reached a settlement agreement regarding Plaintiffs' due proces complaint on September 25, 2015. Id. at ¶¶ 3, 80.

Other disagreements arose on LCSS's evaluation of A.G., his IEP development, and related procedures. Id. at ¶¶ 81-107. On September 29, 2015 and December 18 2015, C.F. filed additional administrative complaints. Id. at ¶¶ 85, 103. TDOE investigated each complaint, but did not find any

procedural or substantive violation of the IDEA. Id. at ¶¶ 87, 105. C.F.'s December 18th complaint attacked LCSS's failure to develop an adequate IEP and other procedural deficiencies. Id. at ¶¶ 4, 106. On January 11, 2016, C.F. filed another due process complaint that LCSS breached the settlement agreement by moving A.G. from Tier III support to Tier II support. Id. at ¶¶ 5, 107-08.

On January 19, 2016, an Administrative Law Judge ("ALJ") found that Plaintiffs' due process complaints "fail[ed] to adequately comply with the legal requirements for filing a Due Process Compalint" because netiher complaint provided the required "'description of the nature of the problem of the child relating to the proposed or refused initiation or change [by the LEA], including facts relating to' any matters concerning the identification, evaluation, or educational placement of a child with a disability, or the provision of a free, appropriate public education." Id. at ¶ 6, 109, 116. Plaintiffs were granted leave to file an amended complaint that complied with IDEA's pleading requirements and the ALJ's order. Id. at ¶ 6. C.F. filed an amended complaint entitled "Pro Se Amendment List of Problems" on February 9, 2016. Id. at ¶ 7, 110. The ALJ also entered a scheduling order on February 17, 2013 that, among other things, set the deadline for LCSS's response and noted, "[u]pon receipt of the LEA's Response, this case will be declared 'at issue' and assigned to a Hearing Judge for further proceedings." (Docket Entry No. 14-3, February 16, 2016 Order, at 1).

LCSS filed its answer and moved to dismiss the administrative charges, to which Plaintiffs replied. (Docket Entry No. 14-4, March 4, 2016 Order, at 1). The ALJ found that the amended complaint lacked sufficient detail to allow LCSS to understand how LCSS improperly implemented or failed to implement A.G.'s IEP or harmed or interfered with A.G.'s education, and Plaintiffs' proposed remedy. (Docket Entry No. 1, Complaint, at ¶ 8). The ALJ found several claims had been

3

earlier litigated and resolved and struck claims from the amended complaint. (Docket Entry No. 13-4 at 1-2). The ALJ, however, found that paragraphs 5-11 of the amended complaint "may raise justiciable issues for a full hearing, and will not be dismissed at this time, but will be forwarded to a hearing judge for further consideration and proceedings." Id. at 3 (footnote omitted). On March 30, 2016, C.F. voluntarily dismissed her last administrative complaint. (Docket Entry No. 1, Complaint, at ¶¶ 9, 112).

### B. Conclusions of Law

Upon a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff, accept all well-pled factual allegations as true, and determine whether the "complaint states a plausible claim for relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009. This standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In a word, the "complaint must contain either direct or inferential allgations respecting all the material elements to sustain a recovery under some viable legal theory." Rippy ex. rel. Rippy v. Hattaway, 270 F.3d 416, 419 (6th Cir. 2001) (quoting Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.3d 434, 436 (6th Cir. 1988)).

Although courts are typically limited to review of the pleadings when faced with a motion under Fed. R. Civ. P. 12(b)(6), a document may be considered without converting the motion into one for summary judgment when the document governs the plaintiff's rights and is necessarily incorporated by reference. In such instances, a court may properly consider "'exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the

claims contained therein...." L.H. v. Hamilton Cnty. Dep't of Educ., No. 1:14-cv-126-CLC-SKL, 2014 WL 6674445, at *1 (E.D. Tenn. Nov. 24, 2014) (quoting Rondigo, L.L.C. v. Twp. of Richmond, 641 F.3d 673, 680-81 (6th Cir. 2011)). Thus, the Court concludes that the attachments to TDOE's motion to dismiss can be considered on these motions to dismiss.

Under the IDEA, all children with disabilities are entitled to a free appropriate public education ("FAPE"). 20 U.S.C. § 1412(a)(1). FAPE's purpose is implemented by a individualized educational plan for each disabled child for which the local LEA is responsible. School Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass., 471 U.S. 359, 368 (1985). The IDEA also creates procedural requirements to "ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a [FAPE]." 20 U.S.C. § 1415(a). Thus, an aggrieved student has the right to file a complaint and request an impartial due process hearing on "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child...." Id. § 1415(b)(6)(A); see also id. § 1415 (f). The IDEA requires such complaints to contain "a description of the nature of the problem of the child relating to such proposed initiation or change, including facts relating to such problem; and a proposed resolution of the problem to the extent known and available to the party at the time." Id. §§ 1415(b)(7)(A)(ii)(III)-(IV); see also 34 C.F.R. §§ 300.153(b)(4)(iv)-(v) and (d) (requiring a description of the problem and a proposed resolution in any complaint filed with the SEA).

In Tennessee, due process hearings are conducted by ALJs from the Administrative Procedures Division of the Secretary of State's Office, who have received training in special education law and the IDEA specifically. Tenn. Code Ann. § 49-10-606; 20 U.S.C. § 1415(f)(3)(A). The decision of the hearing officer "shall be made on substantive grounds based on a determination

5

of whether the child received a [FAPE]" and is considered final. 20 U.S.C. §§ 1415(f)(3)(E)(i); 1415(i)(1)(A).

Any party aggrieved by the findings and final decision rendered in the due process hearing may file an action in the disctrict court. Id. § 1415(i)(2)(A). This right is subject to an exhaustion requirement:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l). Section "1415(i)(2) clearly contemplates that plaintiffs will exhaust their administrative remedies before bringing a civil action to enforce their rights under the IDEA." Covington v. Knox Cnty. Sch. Sys., 205 F.3d 912, 915 (6th Cir. 2000) (citations and footnote omitted).

IDEA's exhaustion requirement "covers not only claims brought under the IDEA, but also any claims that could have been brought under the IDEA," Sagan v. Sumner Cnty. Bd. of Educ., 726 F.Supp.2d 868, 877 (M.D. Tenn. 2010), including exhaustion for "injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies." S.E. v. Grant Cnty. Bd. of Educ., 544 F.3d 633, 642 (6th Cir. 2008) (quoting Robb v. Bethel Sch. Dist. #403, 308 F.3d 1047, 1048 (9th Cir. 2002)). Even where "the IDEA's ability to remedy a particular injury is unclear, exhaustion should be required in order to give educational agencies an initial opportunity to ascertain and alleviate the alleged problem." Sagan, 726 F.Supp.2d at 880 (citation omitted).

Exhaustion "allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children." Bishop v. Oakstone Acad., 477 F.Supp.2d 876, 885 (S.D. Ohio 2007) (quoting J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 112 (2d Cir. 2004)). "[F]ederal courts are not the entities best equipped to craft an IEP or remedial substitutes. They are, instead, suited to reviewing detailed administrative records, such as those that would be furnished through [a] due process hearing[] . . . under the IDEA." Long v. Dawson Springs Indep. Sch. Dist., 197 F.App'x 427, 434 (6th Cir. 2006).

Plaintiffs' first claim in this action challenges the ALJ's dismissal of certain claims from their asministrative complaint contending that the ALJ required them "to file a due process notice that exceeds notice pleading requirements and exceeds the degree of specificity required under IDEA," thereby denying Plaintiffs' "right to the procedural safeguard[s] of a due process hearing." (Docket Entry No. 1, Complaint, at ¶ 115). The IDEA mandates that the state's procedures include "[a] requirement that a party may not have a due process hearing until the party, or the attorney representing the party, files a notice that meets" certain pleading requirements. 20 U.S.C. § 1415(b)(7)(B). Tennessee's procedure requires initial ALJ review of due process complaints before assignment to another ALJ for hearing. (Docket Entry No. 14-3 at 1). Here, Plaintiffs voluntarily withdrew the remaining claims in their amended administrative complaint that the ALJ deemed to be viable. Thus, Plaintiffs did not exhaust their administrative remedies. This claim should be considered only after the exhaustion of Plaintiffs' administrative remedies.

Plaintiffs' second claim in this action challenges the sufficiency of TDOE's investigation and

resolution of Plaintiff C.F.'s administrative complaints. (Docket Entry No. 1, Complaint, at ¶¶ 120-22). TDOE's responses to C.F.'s administrative complaints are not findings or decision under subsection (f) of the IDEA. 20 U.S.C. § 1415(i)(2)(A). The proper procedure for review of TDOE's findings is an impartial due process hearing pursuant to subsection (f) of the IDEA. Id. A parent may file this action for the denial of a FAPE. Id. § 1415(b)(6); Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ., 615 F.3d 622, 629 (6th Cir. 2010) ("[T]he IDEA's procedural safeguards were enacted to resolve disputes regarding the sufficiency of a disabled child's IEP.").

Plaintiffs contend that the TDOE's "violation of any requirement imposed by certain provisions of the IDEA" is actionable under 34 C.F.R. § 300.153(b)(1) because Plaintiffs' complaint asserted "that a public agency has violated a requirement of Part B of the Act or of this part." Yet, 34 C.F.R. § 300.153(b)(1) applies only to the filing of complaints with the state education agency. 34 C.F.R. §§ 300.151-52. The Court concludes that this claim lacks merit.

As to Plaintiffs' claims under the Rehabilitation Act and the ADA, these claims do not excuse IDEA's exhaustion of administrative remedies requirement. "[P]laintiffs must exhaust IDEA procedures if they seek 'relief that is also available' under IDEA, even if they do not include IDEA claims in their complaint." Fry v. Napolean Cmty. Sch., 788 F.3d 622, 625 (6th Cir. 2015) (quoting 20 U.S.C. § 1415(l). Exhaustion is required "when the injuries alleged can be remedied through IDEA procedures, or when the injuries relate to the specific substantive protections of the IDEA." Id. (citing Grant Cnty. Bd. of Educ., 544 F.3d at 642). The Court concludes that Plaintiffs' Rehabilitation Act and ADA claims are inextricably intertwined with Plaintiffs' IDEA claims and should be subject to exhaustion of administrative remedies with two exceptions.

The first exception is based upon Plaintiffs' settlement agreement with Defendant LCSS on

some aspects of A.G.'s education. Section 1415(e)(2)(F) of the IDEA provides:

> In the case that a resolution is reached to resolve the complaint through the mediation process, the parties shall execute a legally binding agreement that sets forth such resolution and that--
>
> > (i) states that all discussions that occurred during the mediation process shall be confidential and may not be used as evidence in any subsequent due process hearing or civil proceeding;
> >
> > (ii) is signed by both the parent and a representative of the agency who has the authority to bind such agency; and
> >
> > (iii) <u>is enforceable in any State court of competent jurisdiction or in a district court of the United States.</u>

20 U.S.C. § 1415 (e)(2)(F) (emphasis added). To the extent the benefits and services were to be provided to Plaintiffs under the Settlement Agreement and that agreement was breached, the Court concludes that exhaustion is not required for this claim.

The second exception is Plaintiffs' challenges to LCSS's systemic practices that are not subject to the IDEA's exhaustion requirement. J.S. ex. rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 114-15 (2d Cir. 2004). Exhaustion is important "in 'textbook' cases presenting issues involving individual children where the remedy is best left to educational experts operating within the framework of the local and state review procedures," but exhaustion is not required for the school district's failure to prepare and implement IEPs on a wide-scale along with other systemic oversights involving proper notifications to parents and training of staff. Id. This Court recently held that "where the state agency is also a defendant and its practices are expressly at issue, there is even more reason to find that state administrative exhaustion would be futile." W.H. v. Tenn. Dep't of Educ., No. 3:15-1014, 2016 WL 236996, at *6 (M.D. Tenn. Jan. 20, 2016).

Here, Plaintiffs' claims that are potential systemic violations of the IDEA are: LCSS's failure

to provide student evaluation to parents prior to IEP meetings, (Docket Entry No. 1, Complaint, at ¶ 50) and LCSS's failure to respond promptly to requests for independent educational evaluation ("IEE"). Id. at ¶ 60. To this extent, Plaintiffs are not required to exhaust these claims for LCSS's alleged systemic practices that allegedly violate the IDEA.

For these reasons, the Defendant LCSS's motions to dismiss (Docket Entry No. 8 and 9) and Defendant TDOE's motion to dismiss (Docket Entry No. 13) should be granted in part and denied in part.

An appropriate Order is filed herewith.

**ENTERED** this the 10th day of January, 2017.

WILLIAM J. HAYNES, JR.
Senior United States District Judge